United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 15, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-20359

_____

FINGER FURNITURE COMPANY INC.,

Plaintiff - Counter Defendant - Appellee,

versus

COMMONWEALTH INSURANCE COMPANY,

Defendant - Counter Claimant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before REAVLEY, DeMOSS and PRADO, Circuit Judges.

PRADO, Circuit Judge.

This appeal arose from a dispute between an insurer,
appellant Commonwealth Insurance Company (Commonwealth), and its
insured, appellee Finger Furniture Company (Finger).  Finger owns
seven furniture stores in Houston, Texas.  Beginning on June 8,
2001 and continuing into June 9, 2001, the heavy rains of
Tropical Storm Allison hit the Houston area and caused severe
flooding.  Because of the flooding, Finger's employees could not
access the Finger store that housed the company's central
computer system.  As a result, Finger could not operate any of
its Houston stores on Saturday, June 9, 2001, and no sales were
made on that date.  All of Finger's stores opened at various
times on Sunday, June 10, 2001.  The following weekend, June 16-

1

17, 2001, sales soared after Finger slashed its prices and customers purchased furniture at discounted prices.

After the flooding, Finger filed a claim for sales lost on June 9-10, 2001 under the business-interruption provision of its insurance contract with Commonwealth. Commonwealth denied the claim. After an unsuccessful mediation effort, Commonwealth initiated a declaratory judgment action against Finger. Commonwealth and Finger stipulated that Finger incurred a gross-earnings loss of $325,402.86 on June 9-10, 2001.[1] Finger filed its answer and counterclaimed seeking $342,029.32 in stipulated losses. This figure was based on the $325,402.86 in lost sales plus $16,626.46 for expenses incurred to determine its claim under the policy.

Both parties moved for summary judgment. The magistrate judge recommended that the district court enter summary judgment in favor of Finger for $342,029.32. The district court adopted the magistrate judge's recommendation and entered judgment in favor of Finger. Finger then asked for attorney's fees. The magistrate judge recommended that the district court grant Finger's request, with some exceptions. The district court entered an award of $79,201.00 for attorney's fees. Commonwealth appealed.

**Whether Summary Judgment Was Proper**

_____

[1]This figure is based on Finger's sales experience on June 10-11, 2000, the same weekend as the flood during the prior year.

The first issue in this appeal is how to calculate a loss under the business-interruption provision of Finger's policy with Commonwealth. Commonwealth contends the district court should have offset Finger's losses on June 9-10, 2001 with Finger's post-storm profits on June 16-17, 2001. Finger, however, contends that the policy language does not allow Commonwealth to consider Finger's post-storm profits in determining Finger's business-interruption losses. According to Finger, Commonwealth seeks to expand the policy language to avoid paying Finger's losses on June 9-10, 2001.

This court reviews the "legal determinations in a district court's decision to grant summary judgment *de novo*, applying the same standards as the district court to determine whether summary judgment was appropriate."[2] Summary judgment is proper where, after viewing the evidence in the light most favorable to the nonmovant, the record indicates that no genuine issue of material fact exists.[3] Interpretation of a contract is a purely legal matter; and therefore, this court reviews the district court's construction of Finger's policy de novo.[4] Because this is a

---

[2]*Gonzalez v. Denning*, 394 F.3d 388, 391 (5th Cir. 2004) (citations omitted).

[3]*Id.*

[4]*See Sentry Ins. v. R.J. Weber Co.*, 2 F.3d 554, 556 (5th Cir. 1993) (explaining that the reach of an insurance contract is a matter of law reviewed de novo).

diversity case, this court must apply Texas contract law to interpret the policy.[5]  In Texas, if a policy is worded so that it can be given only one reasonable construction, the court must enforce the policy as written.[6]  Here, the business-interruption provision has only one reasonable interpretation.

The business-interruption provision provides in relevant part:

> [Commonwealth] shall be liable for the ACTUAL LOSS SUSTAINED by insured resulting directly from such interruption of business, but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business.
> ***
> In determining the amount of gross earnings covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of the damage or destruction and to the probable experience thereafter had no loss occurred.

Commonwealth claims that Finger did not sustain an actual loss under this provision because Finger made up the sales that it did not make on June 9-10, 2001 on June 16-17, 2001.  This position, however, ignores the policy's instructions about how to calculate a business-interruption loss.

The policy language indicates that a business-interruption

---

[5]*See Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n*, 783 F.2d 1234, 1240 (5th Cir. 1986) (stating that a federal court must apply the substantive law of the forum state in a diversity action).

[6]*See Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984).

loss will be based on historical sales figures. Specifically, the policy states that "due consideration shall be given to the experience of the business before the date of the damage or destruction and to the probable experience thereafter had no loss occurred." Historical sales figures reflect a business's experience before the date of the damage or destruction and predict a company's probable experience had the loss not occurred. The strongest and most reliable evidence of what a business would have done had the catastrophe not occurred is what it had been doing in the period just before the interruption.

Commonwealth complains that this interpretation does not account for Finger's profits on June 16-17, 2001, but the business-loss provision says nothing about taking into account actual post-damage sales to determine what the insured would have experienced had the storm not occurred. The contract language does not suggest that the insurer can look prospectively to what occurred after the loss to determine whether its insured incurred a business-interruption loss.[7] Instead, the policy requires due consideration of the business's experience before the date of the loss and the business's probable experience had the loss not occurred. Finger's historical sales figures reflect that consideration.

The parties do not dispute that Finger would have earned

[7]Whether Finger mitigated its damages is not an issue in this appeal.

$325,402.86 on June 9-10, 2001 if it had been able to open its stores.  No evidence indicates that any of the sales expected for June 9-10, 2001 were made up on June 16-17, 2001.  In addition, no evidence indicates that Finger would have cut its prices for June 16-17, 2001 had the loss not occurred.  The district court did not err in calculating Finger's loss.

## Attorney's Fees

The other issue in this appeal is the district court's award of attorney's fees under the Texas Civil Practice and Remedies Code.  Commonwealth claims that the award is excessive because it includes 60.9 hours of prelawsuit legal work, Finger's attorneys billed almost twice as much as Commonwealth's attorneys, and Finger's counsel did not use attorneys assigned to its insurance division.  In response, Finger argues that the Texas Civil Practice and Remedies Code does not specify a starting point for attorney's fees and dismisses Commonwealth's arguments about excessiveness as irrelevant.

This court reviews Commonwealth's argument about the availability of prelawsuit attorney's fees de novo[8] and the amount of the award for an abuse of discretion.[9]  Section 38.001

_____

[8]*See Brown v. Fullenweider*, 135 S.W.3d 340, 346 (Tex. App.—Texarkana 2004, pet. denied) (explaining that whether attorney's fees are available under a particular statute is a question of law that is reviewed de novo).

[9]*See Coffel v. Stryker Corp.*, 284 F.3d 625, 640 (5th Cir. 2002) (stating that the court of appeals reviews the district

6

of the Texas Civil Practice and Remedies Code provides for the recovery of attorney's fees for claims on a written contract.[10] To be awarded attorney's fees, an insured must "(1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages."[11] Section 38.001 does not specify when a party may begin to calculate its attorney's fees.[12]

Commonwealth insists that Finger is not entitled to any of the fees Finger incurred before the lawsuit, but the case law it relies on does not suggest that Finger is precluded from recovering at least some of its prelawsuit fees.[13] If a party is not entitled to attorney's fees until a complaint is filed, a

---

court's award of attorney's fees for an abuse of discretion).

[10] TEX. CIV. PRAC. &. REM. CODE ANN. § 38.001 (Vernon 1997).

[11] *Brown*, 135 S.W.3d at 346-47.

[12] *See* TEX. CIV. PRAC. &. REM. CODE ANN. § 38.001 (Vernon 1997).

[13] *See Life Partners, Inc. v. Life Ins. Co. of N. Am.*, 203 F.3d 324, 326 (5th Cir. 1999) (determining that the plaintiff was not entitled to attorney's fees prior to amending his complaint to state a cause of action under ERISA because the original complaint failed to state a claim for which relief could be granted); *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 12 (Tex. 1991) (finding that attorney's fees were capable of segregation between nonsettling title insurer and settling vendor, and remanding for segregation in order for purchaser to recover attorney fees from title insurer); *Hagedorn v. Tisdale*, 73 S.W.3d 341, 354 (Tex. App.—Amarillo 2002, no pet.) (concluding that the evidence supporting an award of attorney's fees was legally and factually sufficient even though the time spent on the case was not broken down by person); *Walton v. Canon, Short & Gaston*, 23 S.W.3d 143, 153 (Tex. App.—El Paso 2000, no pet.) (considering the sufficiency of the evidence supporting the trial court's findings of fact regarding attorney's fees).

plaintiff would never be entitled to fees incurred in researching and drafting a complaint.[14]  Here, the magistrate judge recognized that it was improper for Finger to recover attorney's fees associated with the prelawsuit appraisal and claim process and the prelawsuit mediation attempt.  Although the magistrate judge did not explain why Finger should not recover those fees, the insurance policy provides that an appraiser will set the amount of loss where the parties cannot agree.  Commonwealth should be not required to pay for Finger's attorney's fees for the appraisal process because the parties contracted for that possibility.  The policy also requires Finger to "assist in effecting settlements."  Because the policy requires this cooperation, Commonwealth should not bear Finger's expenses for attorney's fees associated with a prelawsuit mediation attempt.  The district court, however, did not include these costs in the award.  The district court properly considered the extent to which Finger was entitled to prelawsuit fees.

As for excessiveness, Commonwealth's arguments fail.  This court has set out a nonexhaustive list of factors for considering the reasonableness of attorney's fees,[15] but this court has not

---

[14]See Walton, 23 S.W.3d at 153 (upholding an award of attorney's fees that included time spent drafting a complaint).

[15]See Mid-Continent Cas. Co. v. Chevron Pipe Line Co., 205 F.3d 222, 231 (5th Cir. 2000) (referring to the following as well-known factors: "(1) time and labor required; (2) novelty and difficulty of the issues; (3) required skill; (4) whether other employment is precluded; (5) the customary fee; (6) whether the

indicated that the amount of opposing counsel's fees or a law firm's use of particular lawyers are considerations. Instead, the court has explained that the fact that the district court's award exceeds the amount billed by the other party "is not determinative."[16] The court, however, has considered the time and labor required to litigate a dispute, as well as the novelty and the difficulty of the disputed issues.[17] Here, Finger was required to litigate an issue that a court has never squarely addressed. On its face, an award of $79,201 does not appear unreasonable to litigate an issue of first impression. The district court did not abuse its discretion by entering its award.

## Conclusion

Finger is entitled to judgment in the amount of its stipulated loss, and the district court did not err in awarding attorney's fees. Consequently, the court affirms the district court's judgment.

AFFIRMED.

---

fee is fixed or contingent; (7) time limitations; (8) the amount involved and the results obtained; (9) the attorneys' experience, reputation and ability; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases").

[16]See *Brantley v. Surles*, 804 F.2d 321, 327 (5th Cir. 1986).

[17]See *Mid-Continent Cas. Co.*, 205 F.3d at 231.