# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 15, 2010

No. 09-60209

Charles R. Fulbruge III
Clerk

CATLIN SYNDICATE LIMITED,

Plaintiff–Appellee

v.

IMPERIAL PALACE OF MISSISSIPPI, INC; IMPERIAL PALACE OF MISSISSIPPI, LLC,

Defendants–Appellants

Appeal from the United States District Court
for the Southern District of Mississippi
No. 1:08-CV-97

Before JONES, Chief Judge, and BENAVIDES and PRADO, Circuit Judges.

PRADO, Circuit Judge:

Insurer Catlin Syndicate and casino operator Imperial Palace disagree about how to determine loss under the business-interruption provision of the insurance policy that Catlin issued to Imperial Palace. Catlin argues that the business-interruption provision unambiguously indicates that only historical sales figures should be considered when determining loss. Imperial Palace argues that the provision is ambiguous, and therefore sales figures after reopening should also be taken into account.[1]

---

[1] This issue has caused debate among courts and commentators. *See*, *e.g.*, H. Richard Chattman & Gregory D. Miller, *Measuring Business Interruption Loss in Wide-Impact*

No. 09-60209

We addressed the definition of "loss" under a materially identical business-interruption provision in *Finger Furniture Co. v. Commonwealth Insurance Co.*, 404 F.3d 312 (5th Cir. 2005). *Finger Furniture* does not control this case because it dealt with a question of Texas law, while this case deals with a question of Mississippi law. However, there is no significant difference between Texas and Mississippi law on this issue. Accordingly, we find that Mississippi courts would apply the law in the same way as Texas courts, and we AFFIRM.

**I.**

Hurricane Katrina damaged Imperial Palace, forcing it to shut down for several months. When Imperial Palace reopened, its revenues were much greater than before the hurricane; many nearby casinos remained closed, and people who wanted to gamble had few choices. Imperial Palace submitted a claim to its insurers, including Catlin. Catlin agreed to pay the claim, but the parties disputed Imperial Palace's losses. Imperial Palace stated that its losses were approximately $165 million, while Catlin believed the losses were closer to $65 million. The largest discrepancy was in the amount of business-interruption loss: Imperial Palace put this amount at about $80 million, while Catlin put it at about $6.5 million. This discrepancy resulted from the parties' different interpretations of the policy's business-interruption provision, which states, in pertinent part:

> Experience of the business – In determining the amount of the Time Element loss as insured against by this policy, due consideration shall be given to experience of the business before the loss and the probable experience thereafter had no loss occurred.

Catlin filed a complaint in federal district court, seeking declaratory relief. Imperial Palace counterclaimed for breach of contract and negligence, among other claims. The parties filed cross-motions for summary judgment. Catlin

---

*Catastrophes: Insurance Against Catastrophes or Only Against Insured Damage from Catastrophes?*, 19 COVERAGE 1 (Jul./Aug. 2009).

argued that under the business-interruption provision, Imperial Palace's recovery should be based on net profits Imperial Palace would probably have earned if Hurricane Katrina had not struck the Mississippi Gulf Coast and damaged its facilities. Thus, Catlin stated that Imperial Palace's loss should be determined by looking solely at pre-hurricane sales. Imperial Palace argued that the correct hypothetical was not one in which Hurricane Katrina did not strike at all; it was one in which Hurricane Katrina struck but did not damage Imperial Palace's facilities. Accordingly, Imperial Palace averred that its recovery should be based in part on the amount it actually earned when it reopened after Katrina.

After considering the parties' arguments, the district court denied Imperial Palace's motion in its entirety, and granted Catlin's motion "to the extent that Catlin [sought] a partial summary judgment that [Imperial Palace's] profits upon reopening after Hurricane Katrina should not be taken into account to determine what [Imperial Palace] would have experienced had the storm not occurred." *Catlin Syndicate Ltd. v. Imperial Palace of Miss., Inc.*, No. 1:08-CV-97, 2008 WL 5235888, at *1, *8 (S.D. Miss. Dec. 15, 2008). We granted leave to appeal the district court's interlocutory order solely as to this ruling.

## II.

The district court has diversity jurisdiction over this case under 28 U.S.C. § 1332. We have jurisdiction over Imperial Palace's interlocutory appeal under 28 U.S.C. § 1292(b).

We review the "legal determinations in a district court's decision to grant summary judgment *de novo*, applying the same legal standards as the district court to determine whether summary judgment was appropriate." *Gonzalez v. Denning*, 394 F.3d 388, 391 (5th Cir. 2004) (citations omitted). "Summary judgment is proper where, after viewing the evidence in the light most favorable to the nonmovant, the record indicates that no genuine issue of material fact

No. 09-60209

exists." *Finger Furniture*, 404 F.3d at 313 (citing *Denning*, 394 F.3d at 391).
Interpretation of a contract is a purely legal matter; therefore, we review the
district court's construction of Imperial Palace's policy *de novo*. *See id.* (citing
*Sentry Ins. v. R.J. Weber Co.*, 2 F.3d 554, 556 (5th Cir. 1993)).  Because this is
a diversity case involving a Mississippi contract, we apply Mississippi contract
law to interpret the policy.  *See Ideal Mut. Ins. Co. v. Last Days Evangelical
Ass'n*, 783 F.2d 1234, 1240 (5th Cir. 1986) (stating that a federal court applies
the substantive law of the forum state in a diversity action).  Under Mississippi
law, if a policy is worded so that it can be given only one reasonable construction,
a court must enforce the policy as written.  *See U.S. Fid. & Guar. Co. of Miss. v.
Martin*, 998 So. 2d 956, 963 (Miss. 2008).

### III.

In *Finger Furniture*, a tropical storm caused Finger's stores to close for one
to two days.  404 F.3d at 313.  A week after reopening, Finger slashed prices,
and sales soared.  *Id.*  Finger filed a claim for lost sales under the business-
interruption provision of its insurance contract with Commonwealth.  *Id.*  The
business-interruption provision stated, in pertinent part:

> In determining the amount of gross earnings covered hereunder for
> the purposes of ascertaining the amount of loss sustained, due
> consideration shall be given to the experience of the business before
> the date of the damage or destruction and to the probable
> experience thereafter had no loss occurred.

*Id.* at 314.

Commonwealth denied the claim, arguing that Finger's increased sales the
following week made up for the sales that it did not make while closed.  *Id.* at
314.  Commonwealth filed a declaratory judgment action.  *Id.* at 313.  The
district court granted Finger's motion for summary judgment, and
Commonwealth appealed.  *Id.*

No. 09-60209

In affirming, we explained that the proper method for determining loss under the business-interruption provision was to look at sales before the interruption rather than sales after the interruption. *Id.* at 314. We noted that "the policy requires due consideration of the business's experience before the date of the loss and the business's probable experience had the loss not occurred," and that this language should be interpreted as meaning "that a business-interruption loss will be based on historical sales figures." *Id.* We stated that "[h]istorical sales figures reflect a business's experience before the date of the damage or destruction and predict a company's probable experience had the loss not occurred," and that "[t]he strongest and most reliable evidence of what a business would have done had the catastrophe not occurred is what it had been doing in the period just before the interruption." *Id.*

We declined to consider post-interruption sales, noting that "the business-loss provision says nothing about taking into account actual post-damage sales to determine what the insured would have experienced had the storm not occurred." *Id.* Further, we stated that "[t]he contract language does not suggest that the insurer can look prospectively to what occurred after the loss to determine whether its insured incurred a business-interruption loss." *Id.*

The language in the business-interruption provision of Imperial Palace's insurance policy with Catlin mirrors the language in *Finger Furniture*, with one minor distinction. In *Finger Furniture*, the provision said, "In determining the amount of . . . loss . . . , due consideration shall be given to the experience of the business before the . . . *damage or destruction* and to the probable experience thereafter had no loss occurred." Here, the provision says, "In determining the amount of the . . . loss . . . , due consideration shall be given to experience of the business before the *loss* and the probable experience thereafter had no loss occurred." Imperial Palace urges us to distinguish *Finger Furniture* on this

5

basis. But this is a distinction without a difference; in the context of these business-interruption provisions, the terms "damage or destruction" and "loss" are functionally equivalent.[2] Indeed, in common usage "damage" and "destruction" are two definitions of "loss." RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1137 (2d ed. 2001). Likewise, "loss" is a synonym for "damage." *Id.* at 504.

In addition, Imperial Palace tries to distinguish *Finger Furniture* on its facts. In *Finger Furniture*, the insurer argued that post-storm sales should be taken into account to show that the insured did not actually incur any losses. Here, the insured—not the insurer—argues that post-hurricane sales should be taken into account to show that losses were much greater than pre-hurricane figures would indicate. But our determination in *Finger Furniture*, like our determination here, was based on a legal analysis of the business-interruption provision and did not depend on the facts that Imperial Palace highlights. The language in the two provisions is materially identical, so the analysis is the same despite the factual dissimilarities.

Imperial Palace also argues that *Finger Furniture* is distinguishable because a "favorable conditions clause" might have existed in that case, but none exists in the instant case. A favorable conditions clause prohibits consideration of post-loss business increases when determining the amount of business-interruption losses. If a favorable conditions clause existed in *Finger Furniture*, it did not impact the analysis. Accordingly, it is not a valid basis on which to distinguish *Finger Furniture* from the instant case.

Finally, Imperial Palace argues that Catlin's interpretation of the business-interruption provision conflates the term "loss" with the idea of an

---

[2] Imperial Palace also argues that in *Finger Furniture* we used loss as a descriptive term and did not intend to equate it with damage or destruction. Nowhere in *Finger Furniture* do we find support for this argument.

"occurrence." In this case, Hurricane Katrina was the "occurrence", which inflicted "losses" on many victims, one of which was Imperial Palace. Imperial Palace asserts that Catlin asks us to interpret the business-interruption provision in such a way that the phrase "had no loss occurred" morphs into "had no occurrence occurred." Imperial Palace argues that instead, we should disentangle the loss from the occurrence and determine loss based on a hypothetical in which Hurricane Katrina hit Mississippi, damaged all of Imperial Palace's competitors, but left Imperial Palace intact: the occurrence occurred, but the loss did not. While we agree with Imperial Palace that the loss is distinct from the occurrence—at least in theory—we also believe that the two are inextricably intertwined under the language of the business-interruption provision. Without language in the policy instructing us to do so, we decline to interpret the business-interruption provision in such a way that the loss caused by Hurricane Katrina can be distinguished from the occurrence of Hurricane Katrina itself.[3]

---

[3] Courts interpreting similar business-interruption provisions have generally reached the same conclusion. *See, e.g., Finger Furniture*, 404 F.3d at 314 ("[T]he business-loss provision says nothing about taking into account actual post-damage sales to determine what the insured would have experienced had the storm not occurred."); *Prudential LMI Commercial Ins. Co. v. Colleton Enters., Inc.*, No. 91-1757, 1992 WL 252507, at *4 (4th Cir. Oct. 5, 1992) ("[A]n insured under a business interruption provision such as that here in issue may not claim as a probable source of expected earnings . . . a source that would not itself have come into being but for the interrupting peril's occurrence."); *Am. Auto. Ins. Co. v. Fisherman's Paradise Boats, Inc.*, No. 93-2349, 1994 WL 1720238, at *4 (S.D. Fla. Oct. 3, 1994) ("[H]ad no hurricane occurred (the policy's built in premise for assessing profit expectancies during business interruption), [then] neither would the claimed earnings source.") (quotation omitted). *But see Colleton Enters., Inc.*, 1992 WL 252507, at *4 (Hall, J., dissenting) ("'Had no loss occurred' does not refer to the overall loss in the surrounding area; rather, it clearly refers only to the loss incurred by the insured."); *Stamen v. Cigna Prop. & Cas. Ins. Co.*, No. 93-1005, slip op. at 6 (S.D. Fla. June 10, 1994) (order granting summary judgment) ("If Cigna had meant to preclude consideration of Food Spot's post-hurricane profits in the lost profits calculation, it should have substituted the word 'occurrence' for the word 'loss' in the clause describing how business interruption losses would be calculated.").

No. 09-60209

Because "loss" and "damage or destruction" are equivalent terms, the business-interruption provision in *Finger Furniture* is materially identical to the provision in this case, and our interpretation of the provision in *Finger Furniture* guides us now. *Finger Furniture* tells us "that a business-interruption loss will be based on historical sales figures," and that we should not "look prospectively to what occurred after the loss." 404 F.3d at 314. Thus, in the business-interruption provision at hand, only historical sales figures should be considered when determining loss, and sales figures after reopening should not be taken into account.

*Finger Furniture* does not control this case because it dealt with a question of Texas law, while this case deals with a question of Mississippi law. However, there is no material difference between Texas and Mississippi law on this issue. *Compare Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984) ("When there is no ambiguity [in an insurance contract], it is the court's duty to give the words used their plain meaning."), *with Martin*, 998 So. 2d at 963 ("[I]f [an insurance policy] is clear and unambiguous, then it must be interpreted as written."). Accordingly, we find that Mississippi courts would apply the law in the same way as Texas courts.

**IV.**

We AFFIRM.