# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 29, 2010

No. 09-60661

Lyle W. Cayce
Clerk

WMS INDUSTRIES, INC.,

Plaintiff - Appellant,

v.

FEDERAL INSURANCE CO.,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:06-CV-977

Before JONES, Chief Judge, and KING and HAYNES, Circuit Judges.

PER CURIAM:[*]

WMS Industries, Inc., appeals a final judgment entered in favor of Federal Insurance Co. following a bench trial. This appeal centers on a dispute over the interpretation of a business interruption insurance policy under Mississippi law. The parties disagree over the correct interpretation of multiple provisions of the policy. We AFFIRM the district court's resolution of these disputes.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-60661

## I.  Facts

WMS manufactures electronic slot machines and provides different options for continuing services for those slot machines.  Casinos can lease from WMS (1) stand-alone slot machines, which operate individually; (2) "local-area progressive" ("LAP") slot machines, which are networked within a casino; or (3) "wide-area progressive" ("WAP") slot machines, which are networked across multiple casinos and centrally monitored by WMS.  Each class of WMS's WAP machines participates in a single progressive jackpot, with WMS taking all wagers from a central monitoring location and paying out from that location.  In Mississippi, WMS operated its WAP machines from a central facility known as "Premises 24" in Gulfport, which was connected to the actual slot machines at participating casinos by T-1 data lines provided by a third party.

On August 29, 2005, Hurricane Katrina struck the Mississippi Gulf Coast.  Among many other effects, the hurricane caused extensive damage to the casino industry in Gulfport, Mississippi, including WMS's Premises 24 WAP monitoring facility.  Premises 24 suffered extensive physical damage and lost utility service in the storm.

WMS obtained permission from Mississippi authorities to temporarily move its WAP monitoring for Mississippi to a different facility in Reno, Nevada, and succeeded in doing so on September 11, 2005.  WMS repaired the physical damage to Premises 24 on November 14, 2005, and ultimately moved its WAP operations back to Premises 24 on December 2, 2005.

WMS was covered by Federal's policy for $100 million in losses under the "Business Income and Extra Expenses" ("BI/EE") coverage, but only $1 million under the "Dependent Business Premises" coverage.  Concluding that the bulk of WMS's losses resulted from a loss of income because WMS's casino customers did not reopen for some time rather than from damage to WMS's own premises, Federal ultimately paid policy limits under the Dependent Business Premises

No. 09-60661

coverage. WMS's losses, however, far exceeded these policy limits. As a result, WMS contended that losses attributable to the casinos' closures were also covered under the much higher limit BI/EE coverage. Federal disagreed, and this lawsuit resulted.[1]

## II.  Standard of Review

"The interpretation of an insurance policy, like any contract, is a legal question reviewed *de novo . . . .*" *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 428 (5th Cir. 2007) (citing *Welborn v. State Farm Mut. Auto. Ins. Co.*, 480 F.3d 685, 687 (5th Cir. 2007) (per curiam)). After a bench trial, "[f]actual findings are upheld on appeal unless clearly erroneous." *Leonard*, 499 F.3d at 429 (citing *Provident Life & Accident Ins. Co. v. Sharpless*, 364 F.3d 634, 641 (5th Cir. 2004)).

## III.  Discussion

The primary dispute[2] between the parties dispute boils down to the question of whether, for BI/EE coverage, this policy requires that the property damage at WMS's own premises cause the loss (Federal's contention) or instead that there must be property damage at WMS's own facility as a "trigger" – but then the "scope" of the coverage is for losses caused to WMS by property damage anywhere (*i.e.*, the affected casino customers) (WMS's contention).

The policy provides in part –

---

[1] Federal refused to make any payments under the BI/EE coverage. The district court found some losses due to damage at Premises 24 and ordered a small amount of payments under this coverage. However, the bulk of WMS's claimed losses remained unsatisfied.

[2] We find no reversible error in the district court's resolution of the other disputes between the parties and, for substantially the same reasons given by the district court, affirm those decisions as well.

No. 09-60661

*BI/EE Coverage*

> The following Premises Coverages apply only at those premises for which a Limit Of Insurance applicable to such coverages is shown in the Declarations.
>
> Except as otherwise provided, direct physical loss or damage must:
>
> •     be caused by or result from a **covered peril**; and
>
> •     be at, or within 1,000 feet of, the premises, other than a **dependent business premises**, shown in the Declarations.
>
> . . .
>
> This actual or potential impairment of **operations** must be caused by or result from direct physical loss or damage by a **covered peril** to **property**, unless otherwise stated.
>
> This Premises Coverage applies only at those premises:
>
> •     where you incur a **business income** loss or **extra expense**; and
>
> •     for which a Limit Of Insurance for Business Income With Extra Expense is shown in the Declarations.

*Dependent Business Premises*

> This actual or potential impairment of **operations** must be caused by or result from direct physical loss or damage by a **covered peril** to **property** or **personal property of a dependent business premises** at a **dependent business premises**.[3]

"Because this is a diversity case involving a Mississippi [insurance] contract, we apply Mississippi contract law to interpret the policy." *Catlin Syndicate Ltd. v. Imperial Palace of Miss., Inc.*, 600 F.3d 511, 513 (5th Cir. 2010) (citing *Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n*, 783 F.2d 1234, 1240 (5th Cir. 1986)). Mississippi law provides a familiar standard for interpreting insurance policies:

---

[3] Boldface in the text of these provisions is in the original policy and indicates a defined term.

4

No. 09-60661

> [I]f a contract is clear and unambiguous, then it must be interpreted as written. A policy must be considered as a whole, with all relevant clauses together. If a contract contains ambiguous or unclear language, then ambiguities must be resolved in favor of the non-drafting party. Ambiguities exist when a policy can be logically interpreted in two or more ways, where one logical interpretation provides for coverage. However, ambiguities do not exist simply because two parties disagree over the interpretation of a policy. Exclusions and limitations on coverage are also construed in favor of the insured. Language in exclusionary clauses must be clear and unmistakable, as those clauses are strictly interpreted. Nevertheless, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured.

*U.S. Fid. & Guar. Co. of Miss. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008) (citations and quotation marks omitted). Neither side contends that the policy is ambiguous, though both advance contrary interpretations of it.

We conclude that the BI/EE coverage under this policy unambiguously requires that the losses in question flow from the damage to one of the listed WMS premises, *i.e.*, Premises 24, and not just to property damage anywhere. Accordingly, the losses caused to WMS by the closure of its casino customers' facilities for an extended time are not covered under this portion of the policy (though, of course, they are covered by the Dependent Business Premises coverage). As a result, the district court did not err in denying relief for these amounts in excess of the policy limits of the Dependent Business Premises coverage.

AFFIRMED.