# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20796

United States Court of Appeals
Fifth Circuit

**FILED**

June 8, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

MICHAEL CARTER,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-147

Before SMITH, WIENER, and WILLETT, Circuit Judges.

PER CURIAM:*

The United States sued Michael Carter to collect on a nearly 30-year-old student loan. Carter insisted the loan was not his and that the signature on the promissory note was a forgery. Unpersuaded, the district court granted summary judgment for the Government, finding that Carter failed to produce any evidence of forgery beyond his own affidavits repeating the denials in his pleadings.

We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20796

**I**

The United States sued Michael Carter to collect on a decades-old student loan. The Government attached to its complaint a promissory note that it claims Carter signed in 1986 to secure a $2,500 loan from Bank IV Wichita. At the top of the note, Carter handwrote his name and social security number. In the field labeled "Your Address," Carter listed an address in Houston.

The Government also attached a certificate of indebtedness, in which a Department of Education employee certified the following under penalty of perjury: (1) Carter executed a promissory note on May 5, 1986 in exchange for a $2,500 loan from Bank IV Wichita; (2) Carter defaulted on the loan on October 16, 1987 and has made no payments since; (3) the note was assigned to the Department of Education on January 6, 1993; and (4) the total debt as of December 8, 2014 was $8,551.28.

Carter filed a motion to dismiss, which the district court denied. Carter then filed his Answer. He claimed that he had no reason to apply for the loan, that he was living in Pasadena, Texas in 1986,[1] that the signature was a forgery, and that, anyway, he would have been entitled to debt forgiveness because the school he allegedly attended was a fraud. Carter attached two affidavits to his Answer. They reasserted that the signature was a forgery and included three current examples of his signature.

The Government subsequently moved to strike the jury demand in Carter's Answer, arguing that it sought only equitable restitution from Carter and not damages at law. The district court struck the jury demand the next day before receiving a response from Carter.

---

[1] Although Carter's counsel denied at the motion-to-dismiss hearing that Carter lived at the address on the promissory note, Carter's affidavits denied only that he lived at the address in the certificate of indebtedness (which is different from the one on the note).

No. 16-20796

The Government then moved for summary judgment, requesting the amount set forth in the certificate of indebtedness, $550 in attorney fees, and $75 in processing fees. In response, Carter contended that the Government's evidence was false and that he did not take out the loan. Carter submitted the same two affidavits he submitted with his Answer but did not provide any other evidence of forgery. Following a hearing, the district court entered summary judgment for the Government in the amount of $9,176.28. After the district court denied his motion for reconsideration, Carter timely appealed.

## II

"We review a grant of summary judgment de novo, applying the same standard as the district court."[2] A court must enter summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]

## A

To recover on the promissory note, the Government was required to demonstrate (1) Carter signed it, (2) the Government presently owns or holds it, and (3) it is in default.[4] "If the validity of a signature is denied in the pleadings," as Carter did in his Answer, "the burden of establishing validity is on the person claiming validity"—here, the Government.[5] But under Texas law, when a party produces a signed instrument, "the signature is presumed to be authentic and authorized."[6] And when "a fact is 'presumed,' the trier of fact must find the existence of the fact unless and until evidence is introduced that supports a finding of its nonexistence."[7]

---

[2] *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001).

[3] FED. R. CIV. P. 56(a).

[4] *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001).

[5] TEX. BUS. & COM. CODE § 3.308(a).

[6] *Id.*

[7] *Id.* § 1.206.

No. 16-20796

As a result of the signature-validity presumption, the Government established the prima facie elements of its case by producing the promissory note bearing Carter's signature. The burden then shifted to Carter to produce evidence sufficient for a jury to find that the signature is a forgery.[8]

Carter has not met his burden. His only summary-judgment evidence consisted of two affidavits, in which Carter himself was the affiant, and a letter from his attorney. The affidavits simply recycled Carter's denial that the signature was his. "Such self-serving allegations"—vague and conclusory allegations resubmitted without more—"are not the type of significant probative evidence required to defeat summary judgment."[9] More problematic, Carter's reuse of these bare allegations is circular. Under Texas's burden-shifting framework, Carter's original allegation that the signature is a forgery shifted the burden to the Government. But Texas's presumption of signature validity sent the burden of introducing competent evidence of invalidity back to Carter. To the extent Carter's summary-judgment evidence consisted of restating the denials in the pleadings, Carter merely reinitiated the argument cycle while "fail[ing] to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof."[10]

In one affidavit, Carter provided three current examples of his signature to demonstrate that the signature on the note is a forgery. But in light of Texas's presumption that a signature is authentic, merely producing more signatures and claiming them to be different was insufficient to create a

---

[8] *See id.*; *see also* 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, *Federal Practice and Procedure* § 2727.2 (4th ed. 2016) ("If the summary-judgment movant makes out a prima facie case . . . summary judgment will be granted unless the opposing party offers some competent evidence that could be presented at trial showing that there is a genuine dispute as to a material fact."); *id.* ("[T]he nonmoving party simply is required to show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.").

[9] *Lawrence*, 276 F.3d at 197 (internal quotation marks omitted).

[10] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

genuine issue of material fact.[11] Perhaps the situation would be different had Carter submitted, for example, an affidavit from a writing analyst, but he instead provided only a statement from his attorney that the signatures in the affidavit were "clearly different in several ways." The situation may also have been different had Carter submitted signatures produced *before* this litigation commenced. But Carter's attorney conceded at the summary-judgment hearing that he had failed to respond to multiple discovery requests from the Government for driver's licenses, pay stubs, and other objective examples of Carter's signature.

Moreover, Carter produced no evidence disputing that either the social security number or the address on the note was his.[12] And although the Government requested Carter's residential address history, Carter again failed to respond.

In sum, faced with the presumptively valid note and a sworn certificate of indebtedness, Carter failed to produce competent evidence to support his contention that the signature was a forgery. Self-serving affidavits may serve as competent summary-judgment evidence,[13] and to the extent the Government argues otherwise, we reject this contention. But in light of

---

[11] *See Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 225 (5th Cir. 1991) (noting that "unsupported affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment" (cleaned up)).

[12] Counsel claimed at the summary-judgment hearing that Carter never lived at the address on the note. But a statement from counsel at a hearing is not evidence in the summary-judgment record. Counsel also stated, however, that one of Carter's family members "may" have lived at the address on the note.

[13] *See, e.g.*, *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016) (holding that "the magistrate judge and district court erred in rejecting [one party's summary-judgment] statements as self-serving"); *C.R. Pittman Const. Co. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011) (noting that "[a] party's own testimony is often 'self-serving,' but we do not exclude it as incompetent for that reason alone" (citing *Rushing v. Kan. City S. Ry.*, 185 F.3d 496, 513 (5th Cir. 1999), *superseded on other grounds by* FED. R. EVID. 103(a))).

No. 16-20796

Texas's applicable presumptions and burden-shifting framework, Carter's say-so and a handful of untimely signatures are not enough.[14]

**B**

Carter also challenges the damages award. He first contends that the Government provided no evidence of the interest rate on the note. Carter did not present this argument to the district court and cannot raise it for the first time on appeal.[15]

Second, Carter challenges the award of $550 in attorney fees. We review his challenge to the *availability* of pre-filing attorney fees de novo and to the *amount* for abuse of discretion.[16] Carter's argument seems to be that because the amount awarded represents fees incurred before the case was filed, he cannot owe those fees. We reject Carter's argument that the district court could not award pre-filing attorney fees and find no error in its decision to do so.[17] Moreover, opposing counsel submitted an affidavit detailing the pre- and post-filing work required to prosecute the case as a foundation for the district court's award amount.

Third, Carter contends that the district court should not have awarded $75 in process-server fees because the Government never requested a waiver of service. Federal Rule of Civil Procedure 4(d), however, provides only that a

---

[14] *See, e.g.*, *Lawrence,* 276 F.3d at 197 (noting that where "the government produced sufficient evidence to satisfy its summary judgment burden, the burden shifted to [the nonmovant] to 'set forth specific facts showing that there is a genuine issue for trial,' not just to 'rest upon the mere allegations or denials of the adverse party's pleading.'" (citation omitted)).

[15] *See, e.g.*, *SCA Promotions, Inc. v. Yahoo!, Inc.*, 868 F.3d 378, 384 (5th Cir. 2017).

[16] *See Finger Furniture Co. v. Commonwealth Ins. Co.*, 404 F.3d 312, 315 (5th Cir. 2005).

[17] *See id.* ("If a party is not entitled to attorney's fees until a complaint is filed, a plaintiff would never be entitled to fees incurred in researching and drafting a complaint."). The Government told the district court that it would not request fees for the summary-judgment hearing.

plaintiff "may" request a waiver; it does not mandate that a plaintiff "shall" seek one.[18] We thus find no error.

## C

Carter also rejects the Government's contention that it was pursuing only an equitable remedy, a contention the Government made in its motion to strike Carter's jury demand.

First, Carter claims that the Government abandoned its breach-of-contract claim when it argued that it was seeking only equitable restitution. According to Carter, this "failure to prosecute" resulted in the automatic dismissal of the case under Federal Rule of Civil Procedure 41(b). As a result, Carter says, the district court lacked subject-matter jurisdiction.[19] But "Federal Rule 41(b) only provides for such dismissal on a defendant's motion."[20] Carter filed no such motion. And although a trial court *may* dismiss a case sua sponte for failure to prosecute,[21] the court simply did not do so here. Nothing in Rule 41 calls that decision into question. Thus, the case was not dismissed—automatically, by motion, or otherwise—and the district court properly exercised jurisdiction when it ruled on the motion for summary judgment.

Second, Carter argues that, alternatively, the Government should be estopped from pursuing its breach-of-contract claim because it effectively

---

[18] *See* FED. R. CIV. P. 4(d)(1); *see also* 4A WRIGHT & MILLER, *supra,* § 1092.1 ("[P]laintiffs are under no obligation to utilize this process.").

[19] While Carter did not raise this particular argument in the district court, a dismissal renders a case moot and terminates the court's jurisdiction. *See U.S.D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 134 (2d Cir. 2014) (involving voluntary dismissal under Rule 41(a)). Thus, we must consider this challenge to the court's jurisdiction, even if it has been raised for the first time on appeal. *See United States v. Cotton,* 535 U.S. 625, 630 (2002).

[20] *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1407 (5th Cir. 1993) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–32 (1962)).

[21] *See Martinez v. Johnson*, 104 F.3d 769, 772 (5th Cir. 1997).

No. 16-20796

abandoned the claim in its motion to strike. Carter never raised this argument in the district court, so we will not consider it on appeal.[22]

## D

Next, Carter argues that the district court erred by striking his jury demand. Because the district court properly granted summary judgment, any such error was harmless.[23]

## E

Finally, Carter asks that the case be reassigned to a different district judge on remand. As an initial matter, because we affirm the district court's final judgment, this request is moot. To the extent further proceedings are necessary, Carter's request lacks merit. The district court's comments were perhaps pointed at times, but they provide no basis for "an objective observer to question [the judge's] impartiality" and thus provide no basis for reassignment.[24]

## III

For these reasons, we AFFIRM the judgment of the district court.

---

[22] *See, e.g.*, *SCA Promotions*, 868 F.3d at 384.

[23] *See Laskaris v. Thornburgh*, 733 F.2d 260, 264 (3d Cir. 1984); *cf. JPMorgan Chase Bank, N.A. v. Classic Home Fin., Inc.*, 548 F. App'x 205, 210 n.4 (5th Cir. 2013) ("Because we affirm the district court's grant of summary judgment . . . , we conclude that the challenge to the district court's striking of the jury demand is moot.").

[24] *See Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc.*, 799 F.3d 437, 455 (5th Cir. 2015) (brackets in original) (quoting *In re DaimlerChrysler Corp.*, 294 F.3d 697, 701 (5th Cir. 2002)), *cert. denied,* 137 S. Ct. 499 (2016).