United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 20, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————————

No. 04-50360
Summary Calendar

———————————————

OSCAR C. GONZALEZ,

Plaintiff-Appellant,

versus

LEON DENNING,
SHARON DENNING,
and JOHN J. MULDOON, III,

Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Western District of Texas

———————————————

Before JOLLY, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

PER CURIAM:

I.

Sometime before 2002, Leon and Sharon Denning deposited just over $3.4 million with Euro Bank Corporation in the Cayman Islands. Sometime thereafter, the government of the Cayman Islands froze the Dennings' bank account based on the belief that certain accounts at Euro Bank contained proceeds of criminal conduct. The Dennings promptly hired the Walkers Law Firm in the Cayman Islands to represent them and their company, Behest Corporation, in their attempt to recover the frozen funds.

Walkers filed a proof of debt which was rejected, and initiated an appeal in June, 2002. Walkers was then informed that criminal proceedings had been filed against the officers of Euro Bank, and that these proceedings could delay the return of the Dennings' money by up to two years.

While these proceedings were underway, the Dennings filed suit against John Mathewson, the president of Euro Bank, alleging fraud, breach of contract, and breach of fiduciary duty. Believing the suit to be frivolous, Mathewson filed a motion to dismiss the suit and a motion for sanctions. During depositions, Mathewson's lawyer, Oscar Gonzalez, proposed to the Dennings' lawyer, John Muldoon, a settlement whereby the parties would drop their claims against each other, and Mathewson would use his "significant" contacts in the Cayman Islands to secure the release of the Dennings' money.

During the discovery process, Leon Denning pleaded guilty to tax evasion, and was advised to make full restitution of back taxes, interest, and penalties in order to avoid incarceration. In order to make these payments, Denning needed access to his frozen funds. In an effort to expedite the return of this money, the Dennings and Muldoon entered into a "Consultation and Fee Agreement" with Gonzalez providing that he would "attempt to obtain whatever monies Leon and/or Sharon Denning are entitled to receive," and that in exchange he would "receive Fourteen Percent (14%) of any monies recovered." Gonzalez stated his opinion that

2

recovery efforts would take roughly sixty days to complete.

Following the execution of this agreement on September 24, 2002, Gonzalez began writing letters to the Euro Bank receivers and various government officials in the Cayman Islands, only to be told that no disbursements would be made until legal proceedings were complete. While Gonzalez was engaged in these efforts, Walkers continued pursuing the proof of debt action on appeal. In early 2003, the criminal charges against the Euro Bank officials were unexpectedly dismissed. When it became apparent that their funds would be released by summer 2003, the Dennings wrote to Gonzalez on March 23, 2003, stating that "the deadline for our agreement has come and gone without the return of any funds." The Dennings informed Gonzalez that if they did not receive the total funds deposited with Euro Bank by March 31, 2003, their agreement with Gonzalez would terminate. Gonzalez failed to obtain the funds by this date; however, the Dennings' have since recovered their funds through the judicial process initiated by Walkers.

Gonzalez filed his original petition in the 224th District Court of Bexar County, Texas, alleging that he had fully performed his obligations under the contract and asserting a claim for damages against the Dennings and Muldoon for breach of contract and anticipatory breach of contract. The defendants removed the case to Federal District Court for the Western District of Texas. After denying Gonzalez's motion for summary judgment, the court entered summary judgment in favor of the Dennings on grounds that (1)

3

Gonzalez could not establish damages because he had failed to recover the Dennings' money, and (2) Gonzalez failed to recover the Dennings' money within a reasonable time. The Gonzalez now brings this appeal from the district court's judgment.

## II.

"We review legal determinations in a district court's decision to grant summary judgment *de novo*, applying the same legal standards as the district court to determine whether summary judgment was appropriate."[1] The district court properly grants a motion for summary judgment when, "viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is 'no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.'"[2]

Contract interpretation is a purely legal issue; accordingly, we review the district court's interpretation of a contract *de novo*.[3] As this is a diversity case, we interpret the contract at issue under Texas law. "In the context of contract interpretation, only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties'

---

[1]*See Foster Wheeler Energy Corp. v. An Ning Jiang MV*, 383 F.3d 349, 354 (5th Cir. 2004); *Travelers Ins. Co. v. Liljeberg Enters.*, 7 F.3d 1203, 1206 (5th Cir. 1993).

[2]*Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) (quoting FED. R. CIV. P. 56(c)).

[3]*Empire Fire & Marine Ins. Co. v. Brantley Trucking, Inc.*, 220 F.3d 679, 681 (5th Cir. 2000).

intent that would preclude summary judgment."[4]

Under Texas law, the interpretation of an unambiguous contract is a question of law for the court to decide by "looking at the contract as a whole in light of the circumstances present when the contract was entered."[5] "If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous."[6] If, however, the language of the contract is subject to two or more reasonable interpretations or meanings, it is ambiguous.[7] "A contract is not ambiguous merely because the parties to an agreement proffer conflicting interpretations of a term."[8]

Under Texas law, "[t]he primary concern of a court construing a written contract is to ascertain the true intent of the parties

---

[4]*Amoco Prod. Co. v. Texas Meridian Res. Exploration, Inc.*, 180 F.3d 664, 669 (5th Cir. 1999).

[5]*Philadelphia Am. Life Ins. Co. v. Turner*, 131 S.W.3d 576, 587 (Tex. App.–Fort Worth 2004, no pet.)(quoting *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983)); *see Heritage Res. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996) (holding that unambiguous contracts are enforced as written).

[6]*Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

[7]*Frost Nat. Bank*, 122 S.W.2d at 930 ("[A] contract is ambiguous only when application of the pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which of two or more meanings is the proper meaning.") (citing *Universal CIT Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (1951)).

[8]*Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002) (citing *DeWitt County Elec. Co-op, Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999).

as expressed in the instrument."[9]  "In construing a contract under Texas law, courts must examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless."[10]  "The terms used in the [contract] are given their plain, ordinary meaning unless the [contract] itself shows that the parties intended the terms to have a different, technical meaning."[11]

In the present case, the agreement between Gonzalez and the defendants states that Gonzalez would "attempt to obtain whatever monies Leon Denning and/or Sharon Denning are entitled to receive" from their Cayman Islands accounts, and that in return, Gonzalez would receive "[f]ourteen Percent (14%) of any monies recovered." Gonzalez argues that this language creates a "best efforts" contract, entitling him to compensation in return for his use of best efforts in seeking the return of the Dennings' money.  Under this interpretation, Gonzalez is entitled to compensation for all monies recovered, regardless of whether their recovery is linked in

---

[9]*Nat. Union Fire Ins. Co. of Pittsburgh, Pa.*, 907 S.W.2d at 520; *see also Resolution Trust Corp. v. Cramer*, 6 F.3d 1102, 1106 (5th Cir. 1993) (In the interpretation of a contract, "our ultimate goal is to determine the intent of the parties.").

[10]*Int'l Turbine Servs., Inc.*, 278 F.3d at 497 (citing *Coker*, 650 S.W.2d at 393); *see Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994) ("When construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent.  This court is bound to read all parts of a contract together to ascertain the agreement of the parties.  The contract must be considered as a whole.  Moreover, each part of the contract should be given effect.").

[11]*Am. Nat. Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001) (citing *Pucket v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984)).

6

any way to his efforts, so long as he faithfully used best efforts in seeking their recovery.

Gonzalez's proffered interpretation of the agreement as a "best efforts" contract is incorrect. The words "best efforts" appear nowhere in the agreement, and the words "will attempt to obtain" are more indicative of a contingent fee arrangement than a contract requiring *only* the use of best efforts.[12] In addition, the agreement set forth no standard or guideline by which Gonzalez's performance was to be measured;[13] rather, in the fashion of most contingent fee agreements, his compensation was tied directly to the amount of money he recovered.[14]

The classification of the agreement as a contingent fee contract is further supported by reading the contract as a whole,

---

[12]The cases cited by Gonzalez do not support his interpretation of the agreement as a best efforts contract. In *American Satellite Co. v. United States*, 998 F.2d 950 (Fed. Cir. 1993), the Federal Circuit discusses a contract under the assumption that it requires best efforts without offering any analysis as to the characteristics of a best efforts contract. In *Sunniland Fruit, Inc. v. Verni*, 284 Cal. Rptr. 824 (Cal. Ct. App. 1991), the California Court of Appeal interpreted a contract requiring Sunniland to use best efforts to market grapes, and to obtain the "best" market prices available. Unlike the agreement in *Sunniland*, the agreement in this case does not use the word "best" or any other comparable term.

[13]*CKB & Associates, Inc. v. Moore McCormack Petroleum, Inc.*, 809 S.W.2d 577, 581-82 (Tex. App.–Dallas 1991, writ denied) ("Contracting parties ordinarily use best efforts language when they are uncertain about what can be achieved, given their limited resources. Nonetheless, to be enforceable, a best efforts contract must set some kind of goal or guideline against which best efforts may be measured.").

[14]*See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(d), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon 1998) ("A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (e) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined.").

giving meaning to each provision in context. The agreement grants Gonzalez a limited power of attorney to act on the Dennings' behalf in recovering their monies. This limited power of attorney authorizes Gonzalez to deposit all monies received in a bank account at Frost National Bank in San Antonio in the name of Oscar Gonzalez and John Muldoon. Significantly, the agreement provides that "[d]istributions and payments will be made from this account to [Gonzalez] for the agreed fee . . . ."; the agreement later states that Gonzalez's compensation "will be due and payable upon the deposit of the funds in the bank account at Frost National Bank." These provisions clearly indicate that Gonzalez was to place all monies that he recovered in the stated account, and was to draw his fourteen percent fee from the monies that *he recovered* that were placed in this account.

The agreement also states that Gonzalez "cannot warrant or guarantee the outcome" of his recovery efforts. Gonzalez argues that this language supports his position that his compensation was not made contingent upon the success of his recovery efforts, but rather upon his use of best efforts in seeking recovery. This language is equally supportive of a contingent fee arrangement, and provides no support for Gonzalez's position.

The circumstances surrounding the consummation of the agreement also support its classification as a contingent fee arrangement. The Dennings turned to Gonzalez only after legal

proceedings in the Cayman Islands had stalled, and Leon Denning's imminent sentencing made rapid recovery of the frozen funds necessary. Gonzalez represented that he could recover the frozen funds in sixty to ninety days using Mathewson's "significant contacts" in the Cayman Islands.[15] The Dennings did not grant Gonzalez an exclusive right to represent them, and chose to retain Walkers to prosecute the ultimately successful proof of debt appeal. Finally, the Dennings informed Gonzalez that they did not want "duplication of services." Taken together, these circumstances support the proposition that the Dennings retained Gonzalez in an effort to explore extra-judicial options for recovering their funds, and that he would be compensated if he made good on his promises.

Because the language of the agreement unambiguously indicates that Gonzalez's compensation was intended to be contingent upon his successful efforts to recover the Dennings' monies, he cannot recover on his claim for anticipatory breach of contract. "An 'anticipatory breach' of a contract is one committed before the time when there is a present duty of performance and results from words or conduct indicating an intention to refuse performance in

---

[15]Although Gonzalez contends that he was retained to employ both judicial and extra-judicial means to recover the frozen funds, the agreement contemplates the use of extra-judicial methods when it states that "Gonzalez will comply with all laws and /or Bank Regulations of the Cayman Islands and the United States in recovering these funds."

the future."[16] The "doctrine of anticipatory breach has generally been considered not applicable where the contract is fully performed by one of the parties and nothing further remains to be done . . . ."[17] Texas, however, subscribes to the "minority view to the effect that the doctrine is not restricted to those cases where the contract is still fully executory on both sides."[18]

In Texas, in order to prevail on a claim for anticipatory breach, a plaintiff must establish each of the following elements: (1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party.[19] "[W]hen one party to an agreement has repudiated it, the other party may then accept the agreement as being terminated or consider the repudiation as a breach of contract and bring suit for damages."[20] However, a defendant's duty to pay damages is "discharged if it appears after the breach that there would have been a total failure by the injured party to perform his return

---

[16]23 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 63:29, at 539 (4th ed. 2002).

[17]*Id.* § 63:60, at 689.

[18]*Placid Oil Co. v. Humphrey*, 244 F.2d 184, 187 (5th Cir. 1957) (citations omitted).

[19]*Taylor Pub. Co. v. Sys. Mktg. Co.*, 686 S.W.2d 213, 217 (Tex. App.–Dallas 1984, writ ref'd n.r.e.); *see Universal Life & Accident Ins. Co. v. Sanders*, 102 S.W.2d 405 (Tex Comm'n App. 1937, judgm't adopted)).

[20]*Hauglum v. Durst*, 769 S.W.2d 646, 651 (Tex. App.–Corpus Christi 1989, no writ) (citing *Universal Life & Accident Ins. Co. et al*, 102 S.W.2d at 406).

promise."[21]

In the present case, even if the Dennings' termination of their agreement with Gonzalez constitutes a repudiation and breach, Gonzalez is not entitled to recover damages because the funds were recovered by Walkers via the proof of debt suit. Because Walkers succeeded in recovering the funds shortly after the repudiation, Gonzalez's efforts would have totally failed to obtain their objective.

In addition to his failure to show damages, Gonzalez cannot establish that the Dennings lacked a valid excuse for terminating the agreement. Although the agreement did not contain a specific expiration date, Texas law implies a duty to perform a contract within a reasonable time.[22] The Dennings contend that six months constituted a reasonable time for performance of the agreement. Gonzalez rejects this argument, contending that the agreement is silent as to any time limitations upon its effectiveness. The district court rejected both of these arguments, finding that, based upon the circumstances present when the agreement was consummated, the parties intended the agreement to terminate at such time as the frozen funds were recovered by Walkers.

---

[21]RESTATEMENT (SECOND) OF CONTRACTS § 254 (1981).

[22]*See Koch Indus., Inc. v. Sun Co., Inc.*, 918 F.2d 1203, 1209 n.3 (5th Cir. 1990) ("If a contract does not set a time for performance, the law will imply a duty to perform within a reasonable time; what is reasonable is a question for the finder of fact.") (citing *M.J. Sheridan & Son Co. v. Seminole Pipeline Co.*, 731 S.W.2d 620, 622 (Tex. App.–Houston [1st] 1987, no writ), and *Heritage Res., Inc. v. Anschutz Corp.*, 689 S.W.2d 952, 955 (Tex. App.–El Paso 1985, writ ref'd n.r.e.)).

Determination of a reasonable time during which a contract must be performed is a fact question that is not appropriate for determination on summary judgment. However, determination of the intent of the parties to a contract based upon the unambiguous language of a contract and the circumstances surrounding its formation are appropriate matters for summary judgment. Here, the unambiguous language of the agreement coupled with the circumstances present when the agreement was formed clearly indicate that the parties did not intend for the agreement to continue past the point at which the funds were recovered. Because Walker's efforts at recovering the funds was certain to succeed at the time the agreement was terminated, Gonzalez has failed to show that the Dennings terminated their agreement without just cause.

The district court did not err in holding that no genuine fact issues existed with respect to the interpretation of the agreement between Gonzalez and Denning. In addition, the district court correctly found that no reasonable fact finder could have found for Gonzalez.

The judgment of the district court is AFFIRMED.

12