**ORION IP, LLC, Plaintiff**

v.

**MERCEDES–BENZ USA, LLC, Defendant.**

**No. 607 CV 451.**

United States District Court, E.D. Texas, Tyler Division.

May 30, 2008.

Danny Lloyd Williams, Terry D. Morgan, J. Mike Amerson, Williams, Morgan & Amerson, Houston, TX, Andrew Wesley Spangler, Spangler Law PC, Longview, TX, David Michael Pridham, David Pridham Law Office, Barrington, RI, for Plaintiff.

Allen Franklin Gardner, Michael Edwin Jones, Potter Minton PC, Tyler, TX, D. Clay Holloway, Kilpatrick Stockton LLP, Atlanta, GA, for Defendant.

## MEMORANDUM OPINION AND ORDER

LEONARD DAVIS, District Judge.

Before the Court are Mercedes–Benz USA, LLC's ("MBUSA") Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment (Docket No. 21) and Orion's Cross Motion for Judgment on the Pleadings, or in the Alternative, Motion for Summary Judgment Regarding Release and License Affirmative Defenses and Breach of Contract Counterclaims (Docket No. 24). Having considered the parties' written and oral arguments, the Court **GRANTS** MBUSA's motion and **DENIES** Orion's cross motion.

## BACKGROUND

Orion sued DaimlerChrysler Corporation ("DCC") for infringement of U.S. Patent Nos. 5,645,342 ("'342 patent") and 5,367,627 ("'627 patent") in *Orion IP, LLC v. Ford Motor Company*, 2:04cv313 (E.D. Tex Aug. 25, 2004) (Davis, J.). Orion previously sued MBUSA for infringement of the '342 and '627 patents in *Orion IP LLC v. Mercedes–Benz USA LLC*, 6:05cv322 (E.D.Tex. Aug. 30, 2005) (Davis, J.). On February 16, 2006, DCC and Orion entered into a "Patent License and Settlement Agreement" to resolve both litigations. DCC settled with Orion on behalf of itself and all "DCC Related Companies," including MBUSA. The Agreement defines "DCC Related Company" as

any Person on or after the Effective Date directly or indirectly controlling, controlled by or under common control with DCC, whether through the ownership of securities, as a result of contract or otherwise, it being understood that the ownership of securities or other instruments representing fifty percent (50%) or more of the outstanding voting power of a particular Person shall conclusively constitute control for purposes of this definition. For purposes of this definition, DCC Related Companies shall include, by way of example but not limitation, Mercedes–Benz USA LLC.

In the Settlement Agreement, Orion granted "DCC and the DCC Related Companies a nonexclusive, non-transferable ... royalty-free, fully paid-up, worldwide license ..." to both the '342 and '627 patents. Agreement, ¶ 3. 1.

On August 3, 2007, the Daimler companies (including MBUSA) spilt from the Chrysler companies. Chrysler LLC is the successor to DCC and retained the benefits and obligations under the Settlement Agreement. MBUSA is no longer affiliated with Chrysler LLC.

On September 25, 2007, Orion filed this suit against MBUSA alleging MBUSA "lost" its status as licensee of the '342 and '627 patents when the Daimler–Chrysler split occurred and MBUSA infringes the '342 and '627 patents. MBUSA denied infringement, alleged in its eighth affirmative defense that it has a license to practice the patents, and alleged in its ninth affirmative defense that it has a release of claims for any infringement. MBUSA also filed counterclaims for declarations of invalidity, noninfringement, and breach of the Settlement Agreement.

MBUSA now moves for judgment against Orion's patent infringement claims, claiming it is still entitled to the benefits of the Settlement Agreement. Orion moves

for judgment as to MBUSA's eighth and ninth affirmative defenses and breach of contract counterclaim, claiming MBUSA lost the benefits of the Settlement Agreement when the Daimler and Chrysler companies split.

The issue between MBUSA and Orion is whether MBUSA is still entitled to the benefits of the Settlement Agreement after the Daimler–Chrysler split. Texas law governs the interpretation of the Settlement Agreement. Agreement, ¶ 8.5.

## APPLICABLE LAW

### Standard of Review

■ "The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Johnson v. Johnson,* 385 F.3d 503, 529 (5th Cir.2004). The Court accepts the complaint's well-pleaded facts as true and views them in the light most favorable to the plaintiff. *Id.* A motion to dismiss should not be granted unless the plaintiff would not be entitled to relief under any set of facts that it could prove consistent with the complaint. *Id.*

A "district court properly grants a motion for summary judgment when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Gonzalez v. Denning,* 394 F.3d 388, 391 (5th Cir.2004).

### Texas Contract Law

■ "Contract interpretation is purely a legal issue." *Id.* at 392. "Only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." *Id.* "Under Texas law, the interpretation of an unambiguous contract is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present with the contract was entered." *Id.* A contract is not ambiguous if it is worded so that it can be given a definite or certain legal meaning. *Id.* If the contract's language is subject to two or more reasonable interpretations or meanings, then it is ambiguous. *Id.* But a contract is not ambiguous merely because the parties offer conflicting interpretations of a contract term. *Id.*

■ In construing a contract under Texas law, a court must ascertain and give effect to the parties' intentions as expressed in the document. *Frost Nat'l Bank v. L & F Distribs., Ltd.,* 165 S.W.3d 310, 311–12 (Tex.2005). A court should consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement, such that none of the terms are rendered meaningless. *Id.* at 312; *Gonzalez,* 394 F.3d at 392. Courts construe contracts " 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.' " *Frost Nat'l Bank,* 165 S.W.3d at 312 (quoting *Reilly v. Rangers Mgmt., Inc.,* 727 S.W.2d 527, 530 (Tex.1987)). Terms used in a contract are given their plain, ordinary meaning unless the contract shows the parties intended the terms to have a different, technical meaning. *Gonzalez,* 394 F.3d at 392.

## ANALYSIS

■ Although MBUSA is not a "party" as stated in the Settlement Agreement, Orion and DCC entered into the Settlement Agreement in part to resolve the litigation between Orion and MBUSA. It is undisputed that when Orion and DCC entered into the Settlement Agreement, MBUSA was a "DCC Related Company."

Agreement, Article 1 ("For purposes of this definition, DCC Related Companies shall include, by way of example but not limitation, Mercedes–Benz USA LLC."). In the Settlement Agreement, Orion "grant[ed] to DCC and the DCC Related Companies a nonexclusive, non-transferable ... royalty-free, fully paid-up, world wide license, without the right to sublicense, under the Orion Patents to practice, design, make, have made, operate, have operated, import and use the Licensed Technology...." Agreement, 3.1. The Settlement Agreement did not provide for an end to the license except through termination of the Agreement. The term of the Settlement Agreement "commence[d] upon the Effective Date and shall continue until the expiration of the last-to-expire Orion Patent, unless earlier terminated as set forth below." Agreement, 6.1. The Settlement Agreement provided for termination of the licenses upon written notice if a party failed to cure a breach of the Agreement within thirty days of written notice of the breach. Agreement, 6.2. Orion does not claim that it has invoked the termination provision.

Orion contends that termination was not required for MBUSA to "lose" its license when its affiliation with DCC ended, but there is no provision applicable to MBUSA to that effect. The Settlement Agreement does have such a provision, but it is limited to entities newly created by DCC or DCC Related Companies. Agreement, 7.2 ("[S]uch entity shall have the right to use the Licensed Technology in the Field provided that such new entity would otherwise be and remain a DCC Related Company as defined herein."). Thus, the parties were clearly able to limit the license to the duration of an entity's affiliation with DCC, but chose to do so only for newly created entities and not for entities such as MBUSA that existed at the time of the Effective Date. Under Orion's reading of the Settlement Agreement, this provision

would be superfluous if the license were to automatically end when a covered entity's affiliation with DCC terminated.

At the hearing, but not in its briefing, Orion argued that MBUSA should be considered a new entity as a result of the DCC split. This is contrary to both what Orion argued in its briefing and alleges in its pleadings. In its Amended Complaint for Patent Infringement, Orion alleges that "Mercedes lost its status as a licensee of the '342 [and '627] patent on August 3, 2007." Amended Complaint (Docket No. 17) ¶ 9, 19. Elsewhere in its Amended Complaint, Orion alleges that MBUSA "lost" its license to the patents-in-suit. *Id.* at ¶¶ 10, 13, 20, 23 ("since losing its status as licensee"). Such statements belie the argument that MBUSA became a new entity after the DCC split, because if that were true, the "new" MBUSA—the entity accused in this suit-would never have had a license since it would not qualify as a DCC Related Company. Further, Orion offered no proof to substantiate this argument. Accordingly, Article 7.2 does not apply to MBUSA.

DCC and Orion entered into the Settlement Agreement, in part, to settle the claims in the first lawsuit Orion filed against MBUSA. When Orion and DCC entered into the Agreement, MBUSA qualified as a DCC Related Company and the Agreement specifically lists MBUSA as such. The Settlement Agreement provided for a royalty-free, fully paid-up license for the life of the patents unless the Agreement was terminated. There is nothing in the Settlement Agreement applicable to MBUSA that ends the license except for termination of the Agreement. As the Agreement has not been terminated, MBUSA continues to enjoy the license.

Orion's arguments to the contrary are not persuasive. Orion argues that the use of the present tense in the definition of

"DCC Related Company" implies that an entity is to receive the benefits of the Agreement only so long as it remains affiliated with DCC. However, that limitation is not expressed in the Agreement. As stated above, interpreting the Agreement to have this limitation would render Article 7.2's express limitation to this effect meaningless.

Orion argues that under the Court's interpretation of the Settlement Agreement, a company could end its affiliation with DCC, cause a breach, fail to cure it, and thus terminate the Agreement for DCC. Such a scenario seems unlikely. If a company that is no longer associated with DCC caused a breach, DCC would receive notice of the breach under the Settlement Agreement's notice provisions. Thus, DCC would be made aware of the breach and could either cure the breach itself or, if contractually able, force the breaching entity to cure the breach.[1]

Orion argues the limitations on assignment would be meaningless if DCC could convey a license by controlling any company just briefly. Practical business realities make this a far-fetched concern.

The Agreement is what it is as written. *See* Agreement, 8.9 ("This Agreement embodies the entire understanding of the parties with respect to the subject matter thereof...."). The Court will not rewrite the Settlement Agreement to place limitations on the license. The language of the Agreement does not support Orion's proffered interpretation, and the Court rejects it.

### CONCLUSION

For the reasons given above, MBUSA enjoys a license to practice the patents-in-suit and therefore cannot be liable for its infringement. Accordingly, the Court

GRANTS MBUSA's motion and **DENIES** Orion's cross motion.

In its Answer, MBUSA filed counterclaims against Orion. MBUSA's counterclaims of invalidity and noninfringment are moot in light of this Order, but its counterclaim for breach of contract remains justiciable. However, MBUSA based its allegation of this Court's jurisdiction over its counterclaims on this Court's jurisdiction in patent cases. If MBUSA wishes to continue to assert its breach of contract claim in this Court, the Court **ORDERS** MBUSA to replead its claim specifying the basis for jurisdiction within ten days of this Order or the Court will dismiss the claim without prejudice.

---

1. The Court notes that it appears that the only obligation DCC Related Companies have under the Settlement Agreement is confidentiality.