# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-20345

United States Court of Appeals
Fifth Circuit

**FILED**

May 1, 2014

Lyle W. Cayce
Clerk

PRESTON EXPLORATION COMPANY, L.P.; PEC PARTNERSHIP; T.S.C. OIL & GAS, INCORPORATED; FRANK WILLIS, III,

Plaintiffs – Appellees

v.

G.S.F., L.L.C.; CHESAPEAKE ENERGY CORPORATION,

Defendants – Appellants

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:08-cv-03341

Before SMITH, CLEMENT, and HIGGINSON, Circuit Judges.

PER CURIAM: [*]

Appellant Chesapeake Energy Corporation ("Chesapeake") executed three purchase and sale agreements ("PSAs") for over 500 Texas oil-and-gas leases with the appellees Preston Exploration Company, L.P. ("PEX"), its wholly-owned tax purpose entity PEC Partnership ("PEC"), and two of its investors (T.S.C. Oil & Gas, Inc. and Frank Willis, III) (collectively, "Preston"). Chesapeake failed to attend Closing, and Preston sued for specific

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-20345

performance.[1] On remand from this court, the district court found: (1) Preston had reasonably cured Chesapeake's alleged title defects (or would do so within six months of the Closing); (2) Preston was ready, willing, and able to perform on the Closing date; and (3) Chesapeake breached the PSAs by failing to close. *Preston Exploration Co., LP. v. GSP, LLC*, No. H-08-3341, 2012 WL 6048947, at *8 (S.D. Tex. Dec. 5, 2012). The district court ordered specific performance of the PSAs in favor of Preston for "all the leases for which it has recording information." *Id.* at *9. Chesapeake timely appealed.

## STANDARD OF REVIEW

We review a district court's findings of fact for clear error. *Black v. SettlePou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013). We review *de novo* conclusions of law, including the district court's interpretations of a contract. *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004).

## DISCUSSION

Chesapeake first argues that Preston failed to satisfy the "Conditions Precedent to the Obligations of the Buyer" found at § 9(a)(i)-(iii) of the PSAs, hence Chesapeake was not obligated to close. Specifically, Chesapeake maintains that PEC lacked title to almost $9 million of leases ("No Title Leases"), and therefore could not convey the leases; PEC did not hold *record* title to any of the leases it promised to convey ("Purchase Price Defect"); and Preston threatened litigation in violation of § 9(a)(iii).

We find Chesapeake's arguments unconvincing and hold that Preston satisfied all conditions precedent outlined in the PSAs. After Chesapeake noticed the Purchase Price Defect, Preston replied that "you will be given a

---

[1] We provided a summary of the factual and procedural history of this case when it was before us in *Preston Exploration Co. v. GSF, L.L.C.*, 669 F.3d 518, 519-22 (5th Cir. 2012). We address here only the subsequent proceedings on remand, referring the reader to our prior opinion as needed for further background.

copy of the Assignment from [PEX] into [PEC] at Closing on November 7, 2008." We affirm the district court's conclusion that "PEC's statement that Chesapeake would be given title at closing was clearly an acknowledgment of the defect." *Preston,* 2012 WL 6048947, at \*8. Notably, Chesapeake did not object to Preston's response until litigation and at no time did Chesapeake give notice of an intention to terminate alleging nonsatisfaction of a condition precedent pursuant to § 9(a). We additionally affirm that Preston was prepared to cure the Purchase Price Defect by conveying marketable title to Chesapeake at Closing as "a reasonable and prudent person" in the industry would accept unrecorded title when accompanied with Preston's guarantees, especially as the prior assignment from PEX to its wholly-owned, tax purpose entity PEC was to be recorded upon Closing. Likewise, PEC's lack of title to the "No Title" leases prior to Closing did not violate any of the PSA's covenants and agreements. These leases were not to be included in the November 7 Closing but postponed until subsequent mini-closings, and PEC now has marketable title to the leases in question. Finally, that Preston began to prepare litigation seeking specific performance of the PSAs after Chesapeake signaled its intention to be absent from the Closing does not contravene § 9(a)(iii); nor does it excuse Chesapeake's non-attendance, especially because Chesapeake only became aware of the preparations after the Closing.

Preston's satisfaction of all conditions precedent outlined in the PSAs triggered Chesapeake's obligation to close. Because it is undisputed that Chesapeake neither attended Closing nor transferred the purchase price, we affirm that Chesapeake breached the PSAs. Preston is entitled to specific performance because it complied with the PSAs, including tender of performance, and was ready, willing and able to perform on November 7, 2008, and at all relevant times. *See Preston,* 2012 WL 6048947, at \*8 (citing *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593 (Tex. 2008)).

No. 13-20345

Chesapeake alternatively argues that, even if specific performance properly issued, the judgment should be reduced by the price of 45 other leases it noticed as defective. We accept the testimony and evidence demonstrating that Preston has properly cured any noticed defects as well as properly disputed false defects. We therefore affirm the district court's judgment in the full amount.

## CONCLUSION

Accordingly, we AFFIRM the district court's decision.