Kenneth TONEY, Plaintiff,

v.

STATE FARM LLOYDS, et al., Defendants.

CIVIL ACTION NO. 7:13–CV–183

United States District Court, S.D. Texas, McAllen Division.

Signed June 21, 2014

Ana M. Ene, Richard D. Daly, Richard Daly Law Firm, Houston, TX, Fernando G. Mancias, Law Office of Fernando G. Mancias, Edinburg, TX; for Plaintiff.

Christopher W. Martin, Raymond Matthew Kutch, Jr., Todd Mellies Lonergan, Marilyn S. Cayce, Martin Disiere et al., Houston, TX, for Defendants.

## ORDER

Micaela Alvarez, UNITED STATES DISTRICT JUDGE

Pending before the Court is the motion for summary judgment filed by Defendants State Farm Lloyds ("State Farm") and Rolando Renteria ("Renteria") (collectively, "Defendants").[1] Plaintiff Kenneth Toney has filed a response in opposition, which also includes a request for partial summary judgment.[2] Defendants have replied.[3] After considering the motion, response, record, and relevant authorities, the Court **GRANTS** summary judgment for State Farm and **DENIES** the summary-judgment relief requested in Plaintiff's response.

## I. BACKGROUND

Plaintiff filed a homeowner's insurance claim with State Farm for damages resulting from a hail and windstorm which occurred on March 28, 2012. Thereafter, Plaintiff invoked the appraisal provision of the policy,[4] and the appraisers agreed on an appraisal award of $67,431.47 on November 13, 2012.[5] A portion of the appraisal award, totaling $9,076.63, was allocated for new roof bracing, which consisted of a solid plywood understructure ("solid decking"), as a replacement for the then-existing bracing, consisting of a spaced plywood understructure ("spaced decking").[6] It is undisputed that the disputed, roof-replacement portion of the appraisal award is required, if at all, due to code requirements governing roof repairs, and not because the decking itself was damaged.

Decking requirements for roof repairs are governed by the International Residential Code ("IRC"), as adopted by the State of Texas.[7] On October 24, 2012, the City of Mission issued the first of two letters ("October–24 Letter"), with the salutation "To Whom It May Concern," stating: "It has been confirmed by the [Inter-

1. Dkt. No. 14 ("Motion for Summary Judgment").

2. Dkt. No. 15 ("Response").

3. Dkt. No. 16 ("Reply").

4. See Motion for Summary Judgment at p. 4; see also Response, Undisputed Facts at ¶ 4.

5. See Motion for Summary Judgment, Attach. 5 ("Appraisal Award").

6. See Motion for Summary Judgment at p. 4 & Appraisal Award.

7. TEX. LOC. GOVT. CODE § 214.212.

national Code Council] that the City of Mission, Texas require [sic] [solid decking] for all wood frame construction as per IRC."[8] On November 21, 2012, State Farm sent a letter to the Toneys advising them it was paying the appraisal award, but was withholding $9,076.63 pending investigation of roof-replacement policy requirements.[9] On January 22, 2013, City issued a second letter ("January–22 Letter") stating that, after its investigation of code requirements, "if the roof has pre-existing spaced sheathing, the code does not require solid sheathing to be placed for a re-roofing project."[10] Thereafter, on February 14, 2013, State Farm sent a second letter advising the Toneys that no coverage existed for the $9,076.63 cost associated with the more-expensive decking.

On March 5, 2013, Plaintiff filed his original petition, which asserts claims for breach of contract, as well as violations of the bad-faith and prompt-payment-of-claims provisions of the Texas Insurance Code.[11] Defendants then removed the action to this Court on the basis of diversity of citizenship, asserting that Defendant Rolando Renteria was improperly joined.[12] Thereafter, Defendants filed the instant motion for summary judgment, asserting that summary judgment evidence forecloses Plaintiff's recovery as matter of law, and that Plaintiff's other claims are barred as a result of the same legal conclusion.[13]

## II. INITIAL MATTERS

As an initial matter, the Court first addresses the parties' noncompliance with the Federal Rules of Civil Procedure with regard to the instant filings. Rule 7(b)(2) of the Federal Rules of Civil Procedure provides that "[t]he rules governing captions and other matters of form in pleadings apply to motions and other papers."[14] Rule 10(b) in turn provides that "[a] party must state its claims or defenses *in numbered paragraphs,* each limited as far as practicable to a single set of circumstances."[15] The motion for summary judgment and responsive filings do not have numbered paragraphs, hindering the Court's reference to the parties' arguments and evidence. The parties are cautioned that future submissions should consistently number each paragraphs to properly comply with the rules.

Secondly, the Court addresses the continued joinder of Defendant Rolando Renteria in this action. As previously noted, this Court's jurisdiction was invoked on the basis of the parties' complete diversity, which in turn was contingent on the assertion of Defendant Rolando Renteria's improper joinder.[16] Although Plaintiff initially and cursorily challenged the Court's jurisdiction,[17] Plaintiff subsequently abandoned any challenge to the jurisdictional allegations.[18] In light of Plaintiff's lack of jurisdictional challenge and after reviewing the state court petition, the Court finds that Defendant Renteria was improperly

8. Motion for Summary Judgment, Attach. 3 ("October–24 letter").

9. *See* Motion for Summary Judgment, Attach. 6.

10. Motion for Summary Judgment, Attach. 4 ("January–22 letter").

11. *See* Dkt. No. 1, Attach. 3 ("Petition") at p. 3.

12. *See* Dkt. No. 1 at ¶ 10.

13. *See* Motion for Summary Judgment at I.

14. FED. R. CIV P. 7(b)(2).

15. FED. R. CIV. P. 10(b) (emphasis added).

16. *See* Dkt. No. 1.

17. *See* Dkt. No. 7 at Query 6.

18. *See* Dkt. No. 10 at Query 6.

joined and he is hereby **DISMISSED.** As a result, the Court only considers the motion for summary judgment as asserted by Defendant State Farm Lloyds ("State Farm" or "Defendant").

### III. MOTION FOR SUMMARY JUDGMENT

Defendant's motion seeks summary judgment on Plaintiff's breach of contract claim, based on the position that its payment was sufficient in light of contractual provisions described below, and the motion consequently seeks judgment on the remaining claims. In response, Plaintiff contests the Defendant's motion entirely, and seeks partial summary judgment on the breach of contract claim alone. The Court will utilize the following standard in evaluating the summary-judgment relief requested in each motion.

### A. Legal Standard

In a summary judgment analysis under Federal Rule of Civil Procedure 56, the Court considers evidence from the entire record, and views that evidence in the light most favorable to the non-movant.[19] Thus, although the Court refrains from determinations of credibility and evidentiary weight, the Court nonetheless gives credence to all evidence favoring the non-movant; on the other hand, regarding evidence that favors the movant, the Court gives credence to evidence that is uncon- tradicted and unimpeachable, but disregards evidence the jury is not required to believe.[20]

Viewing the evidence in that manner, summary judgment is proper where two conditions are met: first, the movant must show that the evidence presents no genuine issues of material fact and, second, the movant is entitled to a judgment as a matter of law.[21] In the context of the first criteria, a fact is "material" if its resolution could affect the outcome of the action,[22] while a "genuine" issue is present "only if a reasonable jury could return a verdict for the non-movant."[23] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."[24]

The movant bears the initial burden of showing the absence of a genuine issue of material fact.[25] In this showing, "bald assertions of ultimate fact" are insufficient.[26] Absent a sufficient showing, summary judgment is not warranted, the analysis is ended, and the non-movant need not defend the motion.[27] On the other hand, the movant is freed from this initial burden on matters for which the non-movant would bear the burden of proof at trial; in that event, the movant's burden is reduced to merely pointing to the absence of evidence.[28]

---

**19.** See Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 874 (5th Cir.2000); see also FED. R. CIV. P. 56.

**20.** See id.

**21.** See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**22.** Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc., 482 F.3d 408, 411 (5th Cir.2007).

**23.** Fordoche, Inc. v. Texaco, Inc., 463 F.3d 388, 392 (5th Cir.2006).

**24.** Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**25.** See Celotex Corp., 477 U.S. at 323, 106 S.Ct. 2548.

**26.** Gossett v. Du–Ra–Kel Corp., 569 F.2d 869, 872 (5th Cir.1978).

**27.** See Celotex Corp., 477 U.S. at 323, 106 S.Ct. 2548.

**28.** See id. at 323–25, 106 S.Ct. 2548; see also Transamerica Ins. Co. v. Avenell, 66 F.3d 715, 718–19 (5th Cir.1995).

■ Finally, this Court's jurisdiction is invoked on the basis of diversity of citizenship.[29] This Court, *Erie*-bound, must adhere to grounds of relief authorized by the state law of Texas.[30] Absent a decision by a state's highest tribunal, the decisions by Texas courts of appeals are controlling "unless [the Court] is convinced by other persuasive data that the highest court of the state would decide otherwise."[31]

## B. Summary Judgment Evidence

Although Plaintiff largely adopts and incorporates the summary-judgment evidence attached to Defendant's motion for summary judgment, Plaintiff objects to the Court's consideration of certain evidence, specifically Exhibit D, the January–22 letter, and Exhibit H of Defendant's motion, an appraisal report by Mark West.[32] Neither objection impacts the analysis, since neither piece of evidence informs the Court's conclusion. The January–22 letter is simply not evidence upon which the summary-judgment disposition relies. Furthermore, Plaintiff specifically relies on the January–22 letter, thus rendering the objection a moot consideration.[33] Regarding the second objection, Defendant only relies upon Exhibit H to establish that Plaintiff replaced the wood shake roof with a composition shingle roof.[34] Since the supporting declaration attached to Plaintiff's response is evidence of the same assertion,[35] the Court's consideration of Exhibit H for the purpose proffered by Defendant is immaterial to the analysis, and Plaintiff's objection to that evidence is moot as well.

## C. Breach of Contract Claim

■ The Court first considers summary judgment as to the breach of contract claim, for which both parties seek summary judgment. "In Texas, the essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."[36] The parties' dispute centers on the third element, Defendant's breach of the contract, which Plaintiff alleges in his original petition resulted from State Farm's "wrongfully denying and/or underpaying the claim...."[37] As previously discussed, Plaintiff invoked the appraisal clause of the contract, and the parties then proceeded through the appraisal process, which narrows the Court's summary judgment consideration of the third element, which the Court briefly discusses below.

*Appraisal Provision.* The appraisal provision of the contract between the parties provides that, upon disagreement as to the amount of loss, either party may demand that the amount of loss be set by the agreement of the party-designated appraisers or, alternatively, by a single par-

---

29. Dkt. No. 1 at III.

30. *See Exxon Co. U.S.A., Div. of Exxon Corp. v. Banque De Paris Et Des Pays–Bas*, 889 F.2d 674, 676 (5th Cir.1989); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

31. *Id.* (quoting *West v. AT & T*, 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940)) (internal quotation marks omitted).

32. *See* Response at p. 2.

33. *See* Response, Undisputed Facts at ¶ 12.

34. *See* Motion for Summary Judgment at p. 5.

35. *See* Response, Exh. 1 ("Black Declaration") at p. 2.

36. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir.2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex.App.–Hous. [14th Dist.] 2005, pet. denied)) (internal quotations omitted).

37. *See* Notice of Removal, Attach. 3 at p. 3.

ty-designated appraiser and an appraisal umpire.[38] The language of the instant appraisal provision is consistent with the general concept of such provisions, as summarized by a Texas court of appeals in *Amine v. Liberty Lloyds of Texas Ins. Co.:*

> The purpose of an appraisal clause is to provide a binding, extra-judicial remedy for any disagreement regarding the amount of the loss. Appraisal awards made under the provisions of an insurance contract are binding and enforceable, and a court will indulge every reasonable presumption to sustain an appraisal award. The effect of an appraisal provision is to estop one party from contesting the value of damages in a suit on the insurance contract, leaving only the question of liability for the court.[39]

The foregoing highlights the limits of the appraisal process as only extending to the amount of loss, but falling short of determining liability for that loss. Indeed, though Plaintiff's response makes much ado about the binding nature of appraisal awards, such awards only speak to the amount of loss. Disputes regarding coverage, such as Defendant's challenge to the decking-replacement coverage, are not governed by appraisal awards, which "leav[e] ... the question of liability for the court."[40] Indeed, as the appraisal award itself expressly acknowledges through a

special provision, the award is "subject to policy provisions and deductible," and "policy coverage [is] to be addressed by others."[41]

As noted previously, Defendant never challenged the appraisal-determined amount of loss attributable to the solid-decking replacement, but rather challenged its liability for coverage of that loss.[42] Therefore, though the Court discusses the impact of the appraisal provision on disposition of the breach-of-contract claim as a whole, summary judgment regarding Defendant's refusal to pay for the solid decking is not affected by appraisal-clause considerations. Instead, the materiality of Defendant's refusal largely turns on contractual interpretation of coverage, "a purely legal issue" to which the Court now turns.[43]

 *Contractual Interpretation.* At the outset, the Court sets forth the relevant principles of interpretation for the purposes of summary judgment, which the Fifth Circuit has broadly explained is precluded only when a choice of reasonable interpretations creates a material fact issue regarding the parties' intent.[44] The underpinnings of this statement begin with the mandate under Texas law that, where the contract lacks ambiguity from clear and definite language, a court "must apply the plain language as a matter of law."[45]

**38.** *See* Motion for Summary Judgment, Attach. 1 at p. 33.

**39.** *Amine v. Liberty Lloyds of Texas Ins. Co.,* 01–06–00396–CV, 2007 WL 2264477 (Tex. App.–Houston [1st Dist.] Aug. 9, 2007) (quoting *Breshears v. State Farm Lloyds,* 155 S.W.3d 340, 344 (Tex.App.–Corpus Christi 2004, pet. denied)) (citing *In re Allstate Cty. Mut. Ins. Co.,* 85 S.W.3d 193, 195 (Tex.2002); *Franco v. Slavonic Mut. Fire Ins. Ass'n,* 154 S.W.3d 777, 786 (Tex.App.–Houston [14th Dist.] 2004, no pet.) (internal quotations omitted).

**40.** *Lundstrom v. United Servs. Auto. Ass'n,* 192 S.W.3d 78, 87 (Tex.App.–Hous. [14th Dist.] 2006, pet denied).

**41.** Motion for Summary Judgment, Attach. 5.

**42.** *See* fns. 7–9, *supra.*

**43.** *Gonzalez v. Denning,* 394 F.3d 388, 392 (5th Cir.2004) (per curiam).

**44.** *Gonzalez,* 394 F.3d at 392 (quoting *Amoco Prod. Co. v. Texas Meridian Res. Exploration, Inc.,* 180 F.3d 664, 669 (5th Cir.1999))

**45.** *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines,* 278 F.3d 494, 497 (5th Cir.2002)

Further, even if the parties offer alternative interpretations of contractual language, the language is only ambiguous if it is "reasonably susceptible to more than one interpretation."[46] Finally, consistent with the Court's obligation to determine ambiguities by looking at the contract both as a whole and in light of the circumstances at the agreement's conception,[47] the Court "should attempt to give meaning to each clause in a contract;"[48] by extension, this principle rejects interpretations of a contractual provision which would vitiate the plain meaning of other provisions.

For the purposes of applying those contractual principles, the Court sets out in full the disputed contractual terms, found in the endorsement "Coverage A Loss Settlement Endorsement"[49] ("Endorsement"), and more specifically in the "Option OL Building Ordinance or Law."

2. Damaged Portions of Dwelling

When the dwelling covered under COVERAGE A—DWELLING is damaged by a Loss Insured we will pay for the increased cost to repair or rebuild the physically damaged portion of the dwelling caused by the enforcement of building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

3. Undamaged Portions of Damaged Dwelling

When the dwelling covered under COVERAGE A—DWELLING is damaged by a Loss Insured we will also pay for:

. . . .

c. the legally required changes to the undamaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

4. Building Ordinance or Law Coverage Limitations

. . . .

b. We will not pay more for loss to the undamaged portion of the dwelling caused by the enforcement of any ordinance or law than:

(1) the depreciated value of the undamaged portion of the dwelling, if the dwelling is not repaired or replaced;

(2) the amount you actually spend to replace the undamaged portion of the dwelling if the dwelling is repaired or replaced.[50]

As previously noted, the "building, zoning or land use ordinance or law" at issue is found in International Residential Code, as adopted by the State of Texas.[51]

■ *Defendant's Contractual Compliance.* In the motion and response, the parties do not disagree that enforcement is

---

(citing *DeWitt County Elec. Co-op., Inc. v. Parks,* 1 S.W.3d 96, 100 (Tex.1999)).

**46.** *Id.*

**47.** *See Friendswood Dev. Co. v. McDade & Co.,* 926 S.W.2d 280, 282 (Tex.1996).

**48.** *Hermann Holdings Ltd. V. Lucent Technologies,* 302 F.3d 552, 559–560 (5th Cir.2002) (citing *Balandran v. Safeco Ins. Co. of Am.,* 972 S.W.2d 738, 741 (Tex.1998) ("Our primary goal . . . is to give effect to the written expression of the parties' intent. We must

read all parts of the contract together, striving to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative." (internal citations omitted))).

**49.** *See* Motion for Summary Judgment, Exh. B ("Endorsement").

**50.** Endorsement at pp. 3–4.

**51.** *See* Tex. Loc. Govt. Code § 214.212.

required in order to actuate Defendant's liability; instead, the parties dispute when and whether enforcement occurred. In its motion, Defendant asserts contractual compliance because there is no evidence of enforcement.[52] Specifically, Defendant points to the lack of evidence of the City withholding a building permit pertaining to the Toneys' roof or sanctioning the Toneys for failing to replace any part of the roof with solid wood decking.[53] For his part, Plaintiff argues that the enforcement condition is satisfied by the October–24 Letter, in which the City set forth the ICC's interpretation of the IRC as requiring repairs to roofs which previously featured spaced decking to feature solid decking;[54] as a result, Plaintiff argues that the City was enforcing the solid-decking requirement at the time the home was damaged.[55] In further support of his position, Plaintiff cites to the declaration of Gary Black ("Black Declaration"), who performed the inspection and repair of Plaintiff's roof.[56]

The crux of these competing contentions is whether the City's issuance of the letter constitutes enforcement under the contract. The Court finds that the letter does not constitute enforcement, and that the City had not effected enforcement of the requirement such that Defendant is liable for the cost of solid sheathing. In reaching this conclusion, the Court first relies upon contractual language alone. In the contractual provisions for repair to both damaged and undamaged portions of the roof, the contract provides two conditions for Defendant's liability: (1) enforcement of a building requirement; and (2) existence of the requirement at the time of the loss. By way of evidentiary support that these conditions have been met, the October–24 Letter only evidences the City's recognition of the existence of the requirement at the time of loss. This interpretation is consistent with the Court's obligation to give effect to each clause of the contract, since otherwise equating the City's recognizing the existence of the requirement with the City's enforcement of the requirement would render the existence condition both duplicative and unnecessary. As a second consideration based solely on the contractual language, the Court finds support in *St. Luke's Episcopal Health System Corporation v. Factory Mutual Insurance Company*, a district court decision cited by Defendant in which insurance coverage liability was likewise dependent on enforcement of a building provision.[57] In explaining the distinction between enforcement and mere existence, Judge Hughes wrote:

"Enforcement" is the "carrying out of a mandate or a command." The phrase "enforcement of a law" focuses not on what the code technically says but on what building officials actually require. The city carries out the "mandate or command" of a code provision by executing building standards and withholding permits for construction in violation of those standards. Here, no positive action was undertaken by city officials, nor was the [plaintiff] sanctioned as a result of the alleged non-compliance.[58]

As was the case in *St. Luke's*, Plaintiff's allegations are devoid of any instance of the City of Mission taking affirmative action to "carry out the mandate or com-

---

52. *See* Motion for Summary Judgment at p. 7.

53. *Id.*

54. *See* October–24 Letter at p. 1.

55. *See* Response at ¶ 11.

56. *See id.*

57. No. H–03–5534, 2007 WL 1217763 (S.D.Tex. Apr. 24, 2007).

58. *Id.* at *2 (citing BLACK'S LAW DICTIONARY 528 (6th ed. 1990)) (internal citations omitted).

mand" the decking requirement. The closest Plaintiff comes is Black's statement that "[t]he City of Mission was enforcing the solid decking requirement for wood roofs," included in the Black Declaration.[59] While this statement appears to support Plaintiff's position, it is a legal conclusion not supported by facts in the affidavit, and "[u]nsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment."[60] Here, the ultimate conclusion of law to be determined is whether the City was enforcing the code provision at issue. Black's legal conclusion is not dispositive of the issue. Absent facts to support that legal conclusion, the statement is insufficient to defeat Defendant's motion for summary judgment.

Finally, the foregoing concerns speak to the parties' contractual intent to avoid a circumstance which would potentially obligate an insurer to make a nearly-$10,000 repair solely based on conjecture of enforcement, rather than actual enforcement. Therefore, the Court finds as a matter of law that Defendant is not liable for the cost of solid decking under the terms of the contract. In turn, Defendant directs the Court to the Fifth Circuit opinion in *Blum's Furniture Co., Inc. v. Certain Underwriters at Lloyds London*, which recognized the Texas Supreme Court's holding that estoppel of a breach of contract claim by appraisal is effective where a defendant can show three elements: (1) the existence and enforceability of an appraisal award; (2) the timely payment of the award; and (3) the acceptance of the appraisal award.[61] Defendant has made the requisite showing, Plaintiff does not dispute the applicability of *Blum's Furniture*, and especially since Plaintiff's breach of contract claim is based solely on the allegation that Defendant underpaid the $9,076.63 portion of the appraisal award attributable to the solid decking, the Court finds that summary judgment in Defendant's favor is warranted as to the breach of contract claim.

Accordingly, the Court **GRANTS** the Defendant's motion for summary judgment as to the contract claim. Since Plaintiff's response only seeks summary judgment in its favor on the breach of contract claim, the Court **DENIES** Plaintiff's request in its entirety.

### D. Extra–Contractual Claims

■ *Violation of Prompt–Payment-of-Claims Requirements.* Defendant's next arguments concern Plaintiff's remaining extra-contractual claims, for violations of Chapters 541 and 542 of the Texas Insurance Code. Of these claims, the Court first addresses Plaintiff's claim for violation of the prompt payment of claims requirements under Chapter 542.[62] As with the breach of contract claim, the only factual basis for this claim is Defendant's nonpayment of the disputed, roof-replacement cost.[63] Far from providing evidence creating a genuine issue of material fact on this claim, Plaintiff has failed to even allege

**59.** *See* Black Declaration at p. 2.

**60.** *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985).

**61.** *Blum's Furniture Co., Inc. v. Certain Underwriters at Lloyds London*, 459 Fed.Appx. 366, 368 (5th Cir.2012) (citing *Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, 2011 WL 819491, *1, *3 (S.D.Tex.2011) (quoting *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 787 (Tex.App.–Houston [14th Dist.] 2004)) (internal quotations omitted) ("[W]hen an insurer makes timely payment of a binding and enforceable appraisal award, and the insured accepts the payment, the insured is estopped by the appraisal award from maintaining a breach of contract claim against [the insurer].")).

**62.** *See* Petition at V.B.

**63.** *See* Response at pp. 4–8.

action which would constitute a violation independent of the now-resolved payment dispute. As a result, the Court **GRANTS** summary judgment in Defendant's favor on this claim.

***Bad Faith/DTPA Violations.*** In addition to the claim for breach of contract, Plaintiff asserts that Defendant violated Chapter 541 of the Texas Insurance Code.[64] The Court begins its analysis of this argument in recognition of the principle that "in most circumstances, an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract." [65] Texas law provides that the common-law bad faith standard for breach of the duty of good faith and fair dealing is imputed to statutory liability under Chapter 541 of the Texas Insurance Code; [66] effectively, the predicate for recovery is shared by both claims, such that estoppel is equally dispositive.[67]

■ In light of the Court's determination regarding the breach of contract claim, Plaintiffs' common law or statutory bad faith claims survive the summary analysis only if Plaintiffs raise a genuine issue of material fact as to either of two exceptions recognized in *Republic Ins. Co. v. Stoker*: (1) the insurer's failure to timely investigate the insured's claim; or (2) the insurer's commission of "some act, so extreme, that would cause injury independent of the policy claim." [68] The end result, recognized by the Fifth Circuit in *Blum's Furniture*, is that a plaintiff "can-

not maintain an action for bad faith where the breach of contract claim fails, and neither exception applies." [69]

As noted previously, however, Plaintiff has not challenged the applicability of *Blum's Furniture*, nor attempted to show an exception under *Stoker*. Therefore, the Court finds that Plaintiff has failed to raise a genuine issue of material fact for essential elements of his remaining extra-contractual claims. Indeed, Plaintiff's response does not address Defendant's discussion of the lack of any factual allegations, let alone evidence, beyond the disagreement as to roof-repair coverage. Accordingly, the Court **GRANTS** summary judgment in Defendant's favor on Plaintiff's claims under Chapter 541 of the Texas Insurance Code.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's motion for summary judgment, **DENIES** the summary-judgment relief requested in Plaintiff's response, and Plaintiff's claims are **DISMISSED.** A final judgment will issue separately.

IT IS SO ORDERED.

DONE this 21st day of June, 2014, in McAllen, Texas.

---

64. *See* Petition at V.C.

65. *Liberty Nat. Fire Ins. Co. v. Akin,* 927 S.W.2d 627, 629 (Tex.1996) (citing *Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 341 (Tex. 1995); *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 17 (Tex.1994)).

66. *Texas Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc.,* 324 S.W.3d 305, 317 (Tex.App.–El Paso 2010, review denied) (citing *Progressive County Mut. Ins. Co. v. Boyd,* 177 S.W.3d 919, 922–23 (Tex.2005) (per curiam)).

67. *See Higginbotham v. State Farm Mut. Auto. Ins. Co.,* 103 F.3d 456, 460 (5th Cir.1997).

68. *Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 341 (Tex.1995).

69. *See Blum's Furniture Co.,* 459 Fed.Appx. at 369 (affirming summary judgment on that basis as to the breach of contract and extra-contractual claims) (citing *Akin,* 927 S.W.2d at 629; *Stoker,* 903 S.W.2d at 341).